**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

AMERICAN COMMERCIAL LINES LLC

      Plaintiff

versus

SHELL TRADING (U.S.) COMPANY, *et. al.*

      Defendants

_____

CIVIL ACTION
NO.  09-3392

SECTION:  "B"(4)
JUDGE:  IVAN L.R. LEMELLE
MAG.:   KAREN WELLS ROBY

**MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS**

MAY IT PLEASE THE COURT:

**INTRODUCTION**

    Plaintiff, American Commercial Lines LLC ("ACL"), has filed four declaratory judgment actions seeking declarations that it is not liable to numerous defendants for economic losses allegedly suffered by those defendants due to delays in transit to their respective vessels.

    In the first action, Case No. 09-3392 "B"(4), defendants Shell Trading (U.S.) Company ("STUSCO"), Koch Nitrogen Company, Koch Supply & Trading L.P. ("Koch Supply"), Koch Shipping, Inc. ("Koch Shipping"), Dampskibsselskapet "Norden" A/S ("Norden"), MUR Shipping BV, Amsterdam ("MUR"), Express Marine, Inc. ("Express Marine"), MG Transport Services LLC ("MG Transport"), Ingram Barge Company ("Ingram") and AEP River Operations LLC ( "AEP") moved to dismiss the Declaratory Judgment Complaint under F.R.C.P. 12(b)(1)

for lack of subject matter jurisdiction and F.R.C.P. 12(b)(6) for failure to state a claim or cause of action (Document No. 38).  Defendant Zito Fleeting LLC ("Zito"), having filed an Answer seeking "judgment in its favor" (Document No. 40), belatedly moved to join and adopt the motion of the original moving defendants (Document No. 49), which motion was granted (Document No. 51).[1]

In the second action, Case No. 09-3457 "B"(4), defendant Prince Rupert Shipping, Ltd. ("Prince Rupert") filed a motion to dismiss under F.R.C.P. 12(b)(1) and (6) (Document No. 17). Although it had filed an Answer with a Counterclaim (Document No. 5), defendant Hanjin Shipping Ltd. ("Hanjin") also filed a motion on the same grounds (Document No. 21)[2]

In the third action, Case No. 09-3657 "B"(4), defendant United Maritime Group, LLC and its subsidiaries (collectively "UMG") filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim or cause of action (Document No. 40).  Defendant Weeks Marine, Inc. ("Weeks"), having filed an answer asking for "judgment rendered in [its] favor" (Document No. 49), filed a separate motion, adopting the arguments of UMG (Document No. 50).  Then, defendants Motiva Enterprises, LLC ("Motiva"), Thoresen Shipping Singapore Pte. Ltd. ("Thorensen"), K-Sea Transportation, Inc. ("K-Sea"), Meridian Bulk Carriers, Ltd. ("Meridian"), Vulica Shipping Co. Ltd ("Vulica"), Bulkhandling Handymax AS, Fednav International Ltd., Golden Ocean Group Ltd, Zippora Pte., Ltd. and BP North America

---

[1]Defendants Galborg Pte Ltd. and Geogas Trading SA of Geneva have not yet responded to the Complaint.

[2] The claims by defendants Crescent Towage and Salvage Inc. and Cooper/T. Smith Mooring Co., Inc. have been withdrawn and those causes of action have been dismissed with prejudice.

Petroleum ("BP") filed a joint motion on the same grounds (Document No. 57). Belle Chase Marine Transportation, Inc. ("Belle Chase"), filed an Answer and Counterclaim (Document No. 54-2), and then belatedly moved to dismiss (Document No. 72). Defendant Minotaur Navigation Company, Ltd. ("Minotaur") filed an Answer and Counterclaim (Document No. 63), together with a third party complaint against D.R.D. Towing, L.L.C., Whitfin Shipping Co., Ltd. and Laurin Maritime (America), Inc. (Documents No. 64), but nevertheless filed a motion to dismiss (Document No. 74). Defendants Pacific Basin Shipping (HK) Ltd. "Pacific Basin"), Sorrel Shipmangement Inc. ("Sorrel"), and OSG Shipmanagement (GR) Ltd. ("OSG") filed a joint motion to dismiss (Document No. 75), even though they had all previously filed Answers and Counterclaims (Documents No. 41, 42 and 43). Finally, Stanships, Inc. ("Stanships"), having filed an Answer (Document No. 26), filed a motion to join in and adopt the motions of its co-defendants (Document 73) which has been granted (Document No. 78).[3]

In the fourth action, Case No. 09-4161 "B"(4), defendants Dowa Line Panama, Inc. ("Dowa") and Felicidad Lines Corporation ("Felicidad") moved to dismiss under F.R.C.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim or cause of action (Document No. 25). Defendants Warta Shipping, Ltd., Wisla Shipping, Ltd., Zegluga Polska S.A., Polska Zegluga MOrska (a/k/a Polish Steamship Company), Kandilousa Special

---

[3] Defendant New Orleans Paddlewheels, Inc. ("Paddlewheels") has filed an Answer seeking "judgment in its favor, awarding … all damages it is entitled to…." (Document No. 23) and defendant Allied Transportation Company ("Allied") has filed an Answer and Counterclaim (Document No. 79). The claims of defendant Saudi Petroleum International Inc. and Bunge North America have been withdrawn and those causes of action have been dismissed (Documents Nos. 47 and 56). Defendants Heartland Barge Management, L.L.C., Riverland Resources, Inc., Rio Energy International, Inc., Cargo Carriers, a division of Cargill Marine and Terminal Inc., and Ceres Consulting L.L.C., have yet to appear in the action.

Maritime Enterprises, Megalonissos Special Maritime Enterprises, and Atlas Trading and Shipping filed a joint motion on the same grounds (Document No. 27). Defendants Kirby Inland Marine, LP ("Kirby") and Dixie Offshore Transportation Company ("Dixie") first filed an Answer for judgment "in their favor and finding plaintiff liable as a responsible third party to Kirby and/or Dixie for all the losses they have sustained … and for all equitable and general relief" (Document No. 24). Then Kirby and Dixie filed a motion seeking a stay of the action, or if the stay was not granted, a dismissal (Document No. 30). Defendants Energy Shipping SPA and Liana Carrier, Ltd. filed separate but identical motions to dismiss (Documents No. 31 and 32).[4]

The moving defendants, including those who very recently were pursuing their claims before this Court, assert that there is no subject matter jurisdiction over this case, even though 33 U.S.C § 2717(b) provides for "exclusive original jurisdiction over all controversies arising under" the Oil Pollution Act of 1990 ("OPA"). They seek to have this Court decide, as a matter of first impression, that OPA prohibits declaratory judgment actions, even though the Declaratory Judgment Act ("DJA") had been in effect for years at the time that Congress enacted OPA and no express prohibition against use of the DJA was provided for in OPA.

Further, the moving defendants have misstated the legal position of American Commercial Lines LLC ("ACL") in an attempt to create a straw man that could be easily dismembered. In fact, ACL's legal position set forth in the declaratory judgment complaints is

---

[4] Defendants Gulf South Marine Brokers, Inc., Energy Shipping SPA ("Energy Shipping"), CV Scheepvaartonderneming Slotergracht and Revelle Shipping Agency, Inc. have not appeared in the action.

fully supported by the law of the Fifth Circuit Court of Appeals. Therefore, the Motions to Dismiss must be denied.

## BACKGROUND

On July 23, 2008, a collision occurred between the M/V TINTOMARA and Barge DM-932 on the Mississippi River in the Port of New Orleans. Barge DM-932, an unmanned, non-self-propelled tank barge, was owned by ACL.

The M/V TINTOMARA, a seagoing tanker, struck Barge DM-932. At the time, the barge, ladened with fuel oil, was being towed by the tug MEL OLIVER, operated by D.R.D. Towing. Fuel oil spilled into the Mississippi River. ACL immediately commenced cleanup and removal operations, and proceeded to contain the spill and protect the environment.

The United States Coast Guard identified the Barge DM-932 as the source of the discharge and notified ACL, as the owner of the barge, that it *may* be liable as a "responsible party" pursuant to the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.* ACL has reserved all of its defenses to the possible designation of itself as a responsible party, including but not limited to, the right to assert that the discharge of oil and the resulting damages were caused solely by the act or omission of a third party.

ACL complied with OPA's requirement by appointing Worley Catastrophe Response LLC ("Worley") as its designated third party claims administrator and publishing the Advertisement of Designation in *The Time Picayune* advising that all claims arising out of the oil spill should be presented to Worley for appropriate consideration and processing. ACL also mailed copies of the Advertisement of Designation to all known claimants. Further, the website for the National Pollution Fund Center ("NPFC") contains a similar notice.

ACL, as well as D.R.D. Towing and the TINTOMARA interests, filed exoneration/limitation actions. Several of the moving defendants, including Norden, Mur, Ingram, AEP, Prince Rupert, Thorensen, Vulica, UMG, Sorrell, OSG, Weeks, Pacific Basin, Motiva, Dowa, Felicidad, Kirby and Dixie filed claims in the limitations, seeking to recover, *inter alia,* sums due from ACL as the potential responsible party under OPA. On November 25, 2008, Judge Africk ruled that the time for filing claims in the limitation actions did not apply to OPA claims (Case 08-4007, Document 251). On January 12, 2009, Judge Africk entered an opinion dismissing the OPA claims. Thereafter, on April 22, 2009, this Court issued its Order and Reasons dismissing the general maritime law claims seeking to recover the damages provided for by OPA.

In the meantime, the moving defendants filed administrative claims with Worley, as required by OPA, 33 U.S.C. § 2713(a), seeking to recover sums allegedly due from ACL as the responsible party. On or about April 28, May 6, May 26 and June 24, 2009, ACL notified the parties that their administrative claims were being denied and filed declaratory judgment complaints. An amended complaint denying the claims filed with Worley by defendants Koch Supply and Koch Shipping was filed on May 27, 2009 in Case No. 09-3392 "B"(4).

At the time that the initial complaint was filed herein, only moving defendants Norden and STUSCO, who filed its claim one day before the action was commenced, had claims pending before the NPFC.[5] Although moving defendants Express Marine, MG Transport, MUR,

---

[5] Defendant Galborg, who has not yet appeared in this action, also had a claim on file with the NPFC at the time this action was commenced.

Rio Energy, Meridian, UMG, Weeks, Thorenson, and BP[6] have now filed claims before the NPFC, the other moving defendants have still have not presented claims to the NPFC.  However, AEP has filed a claim in this Court seeking to recover from the funds deposited into the registry of the Court by Indemnity Insurance Company of North America ("IINA") (*see* 08 Civ. 04007, Document No. 679), thus precluding AEP from obtaining relief from the NPFC.  *See* 33 U.S.C. § 2713(b)(2).

**LEGAL STANDARD FOR MOTION TO DISMISS**

The existence of subject matter jurisdiction may be challenged under Rule 12(b)(1) in one of two ways, by either a "facial attack" or a "factual attack."  *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529-30 (5th Cir. 1990).  A "facial attack" is "based on the lack of jurisdiction on the face of the complaint."  *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).  A "factual attack" challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citation omitted).  The instant motions raise a "facial attack."

"A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction."  *Castro v. U.S.*, 560 F.3d 381, 386 (5th Cir. 2009) (citing *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)).  "[U]nder Rule 12(b)(1), the court may find a plausible set of facts supporting subject matter jurisdiction by considering any of the following: '(1) the complaint alone; (2) the

---

[6] Defendant Energy Shipping, who has yet to appear in Case 09-4161, has filed a claim with the NPFC for one of the causes of action in suit.

complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Lane*, 529 F.3d at 557 (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (internal citations omitted)).  As the defendants here do not raise matters outside of the pleadings, the Court should consider the complaints alone to determine whether ACL can prove a plausible set of facts that establish subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Menchaca*, 613 F.2d at 511.

"On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion - the court must consider the allegations of the complaint to be true." *Lawrence,* 919 F.2d at 1529 (citing *Williamson*, 645 F.2d at 412); *see also Wells v. Ali*, 304 Fed. Appx. 292, 293 (5th Cir. 2008) (noting that "standard requires [court] to take the factual allegations of the complaint as true and resolve ambiguities in the plaintiff's favor").  "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction . . . ." *Menchaca*, 613 F.2d at 511 (citation omitted); *see also Paterson*, 644 F.2d at 523 ("The court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true.).  "If those jurisdictional allegations are sufficient the complaint stands." *Paterson*, 644 F.2d at 523.

"In considering a motion to dismiss pursuant to Rule 12(b)(6), '[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Hoover v. Florida Hydro, Inc.*, Civ. No. 07-1100, 2009 WL 1380619 at *2 (E.D. La. May 14, 2009) (citing *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  "The Court may not dismiss a claim unless the moving party can show, 'beyond a doubt, that the plaintiff cannot

prove a plausible set of facts that support the claim and would justify the relief.'"   *Id.* (citing *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)).

### THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

The assertion by the moving defendants that there is no justicible controversy must be rejected.   "A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists."   *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (citations omitted).   An actual controversy exists where "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests."   *Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC.*, 322 F.3d 835, 838 (5th Cir. 2003) (citations omitted).   "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis."   *Orix*, 212 F.3d at 896 (citations omitted).

OPA provides, in pertinent part, that "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this Act…."   33 U.S.C. § 2717(b).   OPA further provides that the defendants first had to file their claims with Worley.   33 U.S.C. § 2713(a).   If a claim is denied, or ACL makes no decision on the claim within the 90 days, then a claimant is allowed to file an action in the United States district court where the pollution occurred.   33 U.S.C. §§ 2713(c), 2727(b).   As ACL has denied the claims of the defendants, this results in an actual case in controversy, thereby bestowing on this Court subject matter jurisdiction to hear the claims.[7]   Furthermore, several defendants have elected to file

---

[7] Indeed, Norden, Mur, Ingram, AEP, Prince Rupert, Thorensen, Vulica, UMG, Sorrell, OSG, Weeks, Pacific Basin, Motiva, Dowa, Felicidad, Kirby and Dixie previously filed their claims with this Court in the consolidated limitation actions.   Those claims were dismissed, not

counterclaims in these actions, thereby electing to proceed in this Court rather than before the NPFC.

## THE DECLARATORY JUDGMENT ACT WAS
## PROPERLY INVOKED IN THIS MATTER

The moving defendants cannot deny that this Court would have subject matter jurisdiction over these OPA claims if they had commenced the action after ACL's denial of their administrative claims.  Therefore, the heart of the argument for lack of jurisdiction is that the dispute is not properly before this Court, because ACL, and not the moving defendants, filed the complaint.

The DJA provides in pertinent part:

> In a case of actual controversy within its jurisdiction, … any court of the United States, upon filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.  Fed.R.Civ.Pro. 57 goes on to provide that "[t]he existence of another remedy does not preclude a declaratory judgment …."

The moving defendants contend that ACL is not entitled to rely upon the DJA because OPA grants to the claimants the right to elect between pursuing a claim before the NPFC and a suit in this Court.  *See* 33 U.S.C. § 2713(c).  However, the DJA has been in force since 1948 and Congress did not see fit to preclude suits under OPA from declaratory judgment actions.  In contrast, Congress in the past, when it has so desired to exclude from the DJA certain types of

---

because there was no justicible controversy, but because they were improperly asserted in the consolidated limitation actions as the defendants had not complied with the presentment requirements of OPA.  AEP still has a claim pending in this Court against the funds deposited into the registry of the Court by IINA (*see* 08 Civ. 04007, Document No. 679).

actions, such as, *inter alia*, actions involving antidumping or countervailing duty claims involving free trade area countries, 28 U.S.C. § 2201, has specifically set forth the exclusion in the statute.  No such exclusion was created for OPA.

Nor can it be argued that Congress did not contemplate declaratory judgments under OPA.  On the contrary, § 2717(f)(2) specifically provides for a court entering "a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions…."  *See also Marathon Pipe Line Co. v. LaRoche Industries, Inc.*, 944 F.Supp. 476, 477 (E.D. La. 1996) (declining to dismiss declaratory action against a possible third party responsible for the spill).

The Fifth Circuit has stated that "the declaratory judgment remedy is an all purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy and an adjudication would serve a useful purpose.  The act is remedial and is to be liberally construed to achieve its wholesome and salutary purpose."  *Allstate Ins. Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971) (citations omitted) ; *see also McDougald v. Jenson*, 786 F.2d 1465, 1481 (11th Cir. 1986).

To be sure, the Supreme Court has "characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citations omitted).  "'[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of [a court's] fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'"  *Id.* at 288 (citations omitted).

The moving defendants reliance upon *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), is misplaced.  In that case, the Fifth Circuit identified six factors that should be considered in determining whether to dismiss a federal declaratory judgment action when a parallel state suit between the same parties is pending.  These factors are "relevant to the abstention doctrine." *Trejo*, 39 F.3d at 590.  Where there is no parallel state proceeding (*i.e.*, "no identity of parties or issues in the state and federal suits"), the considerations of the factors identified in *Trejo* are inapplicable.  *See Agora,* 149 F.3d at 373, 374.

The Fifth Circuit has held that "federal courts should forego jurisdiction in declaratory judgment actions when considerations of judicial economy overwhelm."  *Celestine v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 115 Fed. Appx. 658, 660 (5th Cir. 2004) (citing *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.,* 149 F.3d 371, 372 (5th Cir. 1998)). However, "though the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.,* 996 F.2d 774, 778 (5th Cir. 1993).  "In cases where judicial economy is not an issue, a district court's decision to forego the exercise of its jurisdiction is an abuse of discretion."  *Celestine*, 115 Fed. Appx. at 660 (citing *Agora,* 149 F.3d at 373).  Furthermore, "[c]ourts may not dismiss requests 'for declaratory judgment relief 'on the basis of whim or personal disinclination.'" *Travelers, Inc.,* 996 F.2d at 778 (citation omitted).

Judicial economy favors retention of this declaratory judgment action.  First, this Court already has pending before it consolidated litigation arising out of the July 23 oil spill which will remain in this Court regardless of the outcome of the motions.  Further, moving defendants Zito, Stanships, and Weeks have filed Answers requesting judgments in their favor, thereby placing at

issue their counterclaims for economic losses under OPA.[8]   Additionally, moving defendants Hanjin, Pacific Basin, OSG, Sorrel, Belle Chase and Minotaur have filed Answers and Counterclaims.[9]   Indeed, Minotaur has even filed a Third Party Complaint.  The Counterclaims asserted by the moving defendants, as well as those asserted by the non-moving defendants, will have to be heard by this Court.  *Targa Midstream Services Limited Partnership v. K-Sea Transportation Partners, L.P.*, No. Civ.A. G-05-629, 2006 WL 2520914 (S.D. Tex. Apr. 20, 2006) (denying K-Sea's request to withdraw its counter-claim so as to proceed with a claim before the NPFC).

Second, the moving defendants make the implicit argument that if this action is dismissed, the claims by the moving defendants will <u>not</u> come back to this Court.  **However, this is simply not true.**  Regardless of the outcome before the NPFC, these claims will be back before this Court.

Even if one of the defendants prevails in part in a claim before the NPFC, it would be free to pursue recovery for any unpaid balance from ACL in this Court.  *See United States v. Murphy Exploration and Production Co.*, 939 F.Supp. 489, 491 (E.D. La. 1996) (the plaintiff "sought and obtained compensation from the Oil Spill Disability Trust Fund … before presenting a claim to the responsible party").  In rejecting an argument by the NPFC that the plaintiff had waived any claim against the NPFC by commencing an action against the responsible party, another court has stated that it did "not interpret the OPA as requiring an exclusive election

---

[8] Non-moving defendant Paddlewheels has filed a similar Answer.

[9] Non-moving defendant Allied Transportation Company has filed an Answer and Counterclaim.

between filing a claim with the NPFC and pursuing the responsible party in court." *Rich Franklin Corp. v. United States Department of Homeland Security*, Civil No. 06-1647, 2008 WL 337978 at *6 (D. Or. Feb. 4, 2008); *see also Targa Midstream Services Limited Partnership v. K-Sea Transportation Partners, L.P.*, No. Civ.A. G-05-629, 2006 WL 2520914 at *4 (S.D. Tex. Apr. 20, 2006) ("There is nothing in OPA's statutory scheme that prohibits related litigation from taking place before or after the [NPFC] has ruled on a claim."). In *Rich Franklin Corp.*, the court noted that, after the conclusion of a lawsuit against the responsible party, the claimant could have presented a claim to the Fund for the claimant's unpaid remediation costs but for the claimant's release of the responsible party from further liability, thereby prejudicing the Fund's right of subrogation. *See id.* Similarly, in this case, the moving defendants would not be barred from pursuing actions in this Court after a resolution of their claims before the NPFC.

Alternatively, if the defendants were to receive compensation from the NPFC, a condition of the payments will be that the NPFC be fully subrogated to the defendants' rights against ACL, 33 U.S.C. § 2713(f). Thereafter, the NPFC will pursue the claims in this Court against ACL. 33 U.S.C. § 2715(c). "'Because a subrogation action is derivative, the defendant . . . may ordinarily assert any defense he would have had in a suit by the subrogor.'" *Guillot v. Hix,* 838 S.W.2d 230, 232 (Tex. 1992) (cited in *Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997)); *see generally Complaint of Admiral Towing and Barge Co.*, 767 F.2d 243, 250 (5th Cir. 1985) (holding that "a subrogee can obtain no greater rights than its subrogor had"); *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 344 F.3d 211 (2d Cir. 2003) (noting that "'a subrogation claim by an insurer 'depends upon the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured'"). The

moving defendants' assertion that any decision in this action will have no precedential effect as to any claim by the NPFC is obviously wrong.

Of course, if the defendants' claims are denied by the NPFC, they can either seek review of that ruling in this Court or seek to recover from ACL by suing it as the responsible party. Indeed, defendants Kirby and Dixie have as much as admitted that they intend to pursue recovery from ACL if they are not satisfied by the result before the NPFC by seeking a stay, rather than an outright dismissal.  However, if the stay is granted, the NPFC will still be precluded by § 2713(b)(2) from approving or certifying the claims of Kirby and Dixie as the action involving their claims will still be pending, although stayed.

Since the claims by the moving defendants will return to this Court in some fashion, there is no judicial economy in dismissing this action.  On the other hand, as discussed at the close of this Memorandum, ACL believes that if the Court would resolve a few legal issues, the majority, if not all of the claims of the moving defendants, could be amicably resolved.  *See* pp. 21 to 24 below. Therefore, the actions should not be dismissed.  *Celestine*, 115 Fed. Appx. at 660 (citing *Agora,* 149 F.3d at 373).

Further, as long as these actions are pending, the NPFC is precluded from approving or certifying the claims by the moving defendants.  33 U.S.C. § 2713(b)(2).  *See also Targa Midstream Services Limited*, 2006 WL 2520914 at *4 (the NPFC "cannot approve or certify a claim during pendency of an action in court to recover costs which are the subject of the

claim.").[10]   Therefore, the only way to avoid duplication of effort and to achieve economy of

judicial and administrative resources is for this Court to deny the motion to dismiss.

### THE PRIMARY JURISDICTION DOCTRINE IS NOT APPLICABLE

The doctrine of primary jurisdiction "applies when a court has original concurrent

jurisdiction over the claim rather than just appellate jurisdiction."  *Penny v. Southwestern Bell*

*Telephone Co.*, 906 F.2d 183, 187 (5th Cir. 1990) (footnote omitted).   The Fifth Circuit has

described the doctrine as:

> When legal disputes develop that directly affect an industry subject to regulation,
> the need arises to integrate the regulatory agency into the judicial decision making
> process.  One method to accomplish integration is to have an agency pass in the
> first instance on those issues that are within its competence.  In short, the agency
> should have the first word.

*Mississippi Power & Light Co. v. United Gas Pipe Line*, 532 F.2d 412, 417 (5th Cir. 1976).  The

doctrine "arises when properly adjudicating a claim in federal court involves 'some issue within

the special competence of an administrative agency,' and the doctrine requires the court to

'enable a 'referral' to the agency' so that the parties may seek an administrative ruling on the

issue."  *Parker v. Board of Sup'rs University of Louisiana-Lafayette*, 296 Fed. Appx. 414, 419

(5th Cir. 2008) (quoting *Reiter v. Cooper,* 507 U.S. 258, 268 (1993)).

> 'Primary jurisdiction' … applies where a claim is originally cognizable in the
> courts, and comes into play whenever enforcement of the claim requires the
> resolution of issues which, under a regulatory scheme, have been placed within
> the special competence of an administrative body; in such a case the judicial

---

[10]  AEP's claim also cannot be approved or certified by the NPFC so long as its claim
against the funds deposited into Court by IINA is still pending.  33 U.S.C. § 2713(b)(2).  *See also*
*Targa Midstream Services Limited*, 2006 WL 2520914, at *4.  The same is true of the claims of
defendants Zito, Stanships, and Weeks who have asked for judgments in their favors and
defendants Hanjin, Pacific Basin, OSG, Sorrel, Belle Chase and Minotaur who have filed
counterclaims.

> process is suspended pending referral of such issues to the administrative body for
> its views.

*U.S. v. Western P.R. Co.*, 352 U.S. 59, 63-64 (1956) (citation omitted).

However, the Fifth Circuit has cautioned the district courts that they "should be reluctant to invoke the doctrine of primary jurisdiction . . . ." *Mississippi Power*, 532 F.2d at 419. It would be particularly inappropriate to apply the doctrine to these claims since OPA in fact creates just the opposite presumption. The NPFC is precluded from ruling on a claim while litigation on the claim is pending. 33 U.S.C. § 2713(b)(2). "There is no statutory mandate that all related litigation be stayed pending resolution of the claim before the [NPFC], nor is there any indication that under OPA a party is prejudiced because its [NPFC] claim is determined after related litigation in a district court." *Targa Midstream Services Limited*, 2006 WL 2520914 at *4.

Although concerned with similar matters, the primary jurisdiction and exhaustion of administrative remedies doctrines are not the same and should not be confused. As explained by the Supreme Court:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of
> administrative remedies, is concerned with promoting proper relationships
> between the courts and administrative agencies charged with particular regulatory
> duties. 'Exhaustion' applies where a claim is cognizable in the first instance by
> an administrative agency alone; judicial interference is withheld until the
> administrative process has run its course.

*U.S. v. Western P.R. Co.*, 352 U.S. 59, 63-64 (1956) (citation omitted). However, like primary jurisdiction, exhaustion of administrative remedies is contrary to the statutory requirement under

OPA that the NPFC refrain from resolving any claims while related litigation is pending.[11]   In any event, like the primary jurisdiction, the exhaustion doctrine does not preclude filing this action under the DJA.   *Thomas v. Vaughn*, 915 F.Supp. 1177, 1180-81 (M.D. Ala. 1995) (allowed declaratory judgment action to continue, although administrative proceedings were pending before the FCC).   *See also Haitian Refugee Ctr. v. Civiletti*, 503 F.Supp. 442, 468 (S.D. Fla. 1980).

### ACL IS NOT BARRED BY JUDICIAL ESTOPPEL

> Judicial estoppel is an equitable doctrine that "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding."  *Hall v. GE Plastic Pac. PTE Ltd.,* 327 F.3d 391, 396 (5th Cir.2003) (citations omitted).   The purpose of the doctrine is to "protect [ ] the essential integrity of the judicial process" by reducing the "risk of inconsistent court determinations."  *New Hampshire v. Maine,* 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (internal quotations omitted).

*Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008), *cert. denied, sub nom. Cornerstone America v. Hopkins*, 129 S. Ct. 1635, 173 L. Ed. 2d 998 (U.S. 2009).   "[B]ecause 'judicial estoppel is an equitable doctrine, [ ] the decision whether to invoke it [is] within the court's discretion.'"  *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (citation omitted).   The Supreme Court has listed three factors in determining whether judicial estoppel applies:

> First, a party's later position must be "clearly inconsistent" with its earlier position. . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled". . . .  A third

---

[11]  Obviously, Congress was less concerned with the courts deferring to the NPFC's purported expertise than it was with making the Oil Spill Liability Trust Fund the last resort for payment.

> consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, 532 U.S. at 750-51 (internal citations omitted).

First and foremost, the position taken by ACL in this action under the DJA is entirely consistent with the position taken earlier in the consolidated limitation actions. Initially, ACL moved to dismiss the OPA claims from the limitation actions on the grounds that the OPA claimants were not allowed to proceed in court until they had complied with the presentment requirement of 33 U.S.C. § 2713(a) (Case 3657, Document No. 40-7, pp. 4-7). This motion was granted by Judge Africk. Thereafter, ACL moved to dismiss the general maritime claims asserted in the consolidated limitation actions that sought to the recover the very damages enumerated under OPA on the basis that OPA pre-empted the general maritime law claims (Document 38-5) and that motion was also granted by this Court.

The moving defendants have now complied with OPA's presentment requirement by filing their claims with Worley. Since ACL has denied the administrative claims filed with Worley, they are ripe for decision by this Court, just as ACL had indicated they would be in their moving papers in the original motion to dismiss the OPA claims (*see* Case 3657, Document No. 40-7, p. 4 stating the "If the claim is presented and the responsible party denies all liability or the claim is not settled within 90 days of presentment, then the claimant may elect to file suit in federal court."); in the follow up motion to dismiss the general maritime claims seeking to recover the same damages enumerated by OPA (*see* Case 3392, Document No. 38-5, pp. 7-8 repeating that "If the claim is presented and the responsible party denies all liability or the claim

is not settled within 90 days of presentment, then the claimant may elect to file suit in federal court.") and at the oral argument on April 16, 2009:

> Well, the claims presentment procedure allows for the [responsible party], once [the claimants] get the proper paperwork into the process, 90 days to decide either, yes, we'll pay it or to settle it or to pay part of it or no we're not going to pay it, and then after that 90 days if it's not resolved, then the claimant can take their case to the National Pollution Fund Center, which takes it out of the Court system, which is the goal, the desire of Congress in setting this up, **or they can file an OPA suit and come back against the responsible party on the issue of damages**….

(Emphasis added, Case 3392, Document 38-6, p. 3).

If anybody is taking an inconsistent position in the declaratory judgment actions, it is those claimants who vigorously contested ACL's follow-up motion to dismiss the general maritime claims who now express outrage that they are being required to pursue their claims in this Court rather than the NPFC when previously they had insisted upon the right to pursue their claims before this Court under the general maritime law rather than before the NPFC under OPA. They have obviously decided that they want "two bites at the apple" rather than a legally binding decision from this Court.

With respect to the other two factors mentioned by the Supreme Court in *New Hampshire*, 532 U.S. at 750-51, since ACL's position in this motion is entirely consistent with the positions taken in ACL's motions in the consolidated limitation actions, there is no danger that accepting ACL's position in this case would create a "perception" that this Court had been mislead nor is there any danger that ACL would be gaining an unfair advantage over the moving defendants.

ACL should not be judicially estopped from pursuing the declaratory judgment actions pending before this Court.

### THE COMPLAINT AND AMENDED COMPLAINT
### STATE VALID CAUSES OF ACTION

OPA provides in § 2702:

(a) …each responsible party for a vessel … from which oil is discharged …into or upon the navigable waters or adjoining shorelines … is liable for … damages in subsection (b) that result from such incident.

\* \* \*

(b)(2) Damages
The damages referred to in subsection (a) of this section are the following:

\* \* \*

(B) Real or personal property
Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

\* \* \*

(E) Profits and earning capacity
Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

Under well established Fifth Circuit precedent, the moving defendants are not entitled to recover purely economic losses without proof that they have suffered any physical damage.  *In re Taira Lynn Marine Limited Number 5, LLC*, 444 F.3d 371 (5th Cir. 2006); *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985), *cert. denied,* 477 U.S. 903 (1986); *see also*, *In re Cleveland Tankers, Inc.*, 791 F.Supp. 669 (E.D. Mich. 1992).

OPA has partially, but not totally, relaxed the requirement for physical damage.  First, § 2702\(b)(2)(B) allows recovery of economic losses resulting destruction of property leased to, but not owned by, the claimant.  *See In re Taira Lynn Marine Limited Number 5, LLC*, 444 F.3d 371, 382 (5th Cir. 2006).  But none of the moving defendants allege that their vessels were destroyed by the spill.

Further, OPA allows for recovery for lost profits or impairment of earnings under § 2702(b)(2)(E) caused by damage to even someone else's property.  In *In re Taira Lynn Marine Limited Number 5, LLC*, 444 F.3d 371 (5th Cir. 2006), the Fifth Circuit held that in order to recover economic losses under § 2702 (b)(2)(E), a claimant must still show that the economic losses resulted from property damage caused by the discharge of oil into the navigable waters. *Id.* at 383 ("Claimants have not raised an issue of fact as to whether their economic losses are due to damage resulting from the discharge of gas.").

Some of the moving defendants allege that the spill injured the Mississippi River, "a natural resource" (*see e.g.* Case No. 3457, Doc. No. 5, Counterclaim ¶ 3).[12]  Even if the spill constituted "injury" to a natural resource, that interpretation of § 2702(b)(2)(E) would automatically give rise to a right to recover for lost profits or reduction in earning capacity whenever there is an oil spill on a navigable water.  If the language was read that broadly, it would render the rest of the section, as well as § 2702(b)(2)(B), redundant.  The "cardinal principle of statutory construction," *Williams v. Taylor*, 529 U.S. 362, 404 (2000), is that statutes should be interpreted to give effect to every clause and word of a statute.  *Duncan v. Walker,* 533 U.S. 167, 174 (2001).  *See also In re Whitaker Construction Company, Inc.*, 411 F.3d 197, 205 (5th Cir. 2005) ("Courts should give effect to all parts of a statute and should not adopt a

---

[12] Section 2702(b)(2)(C) provides for recovery for damages for "loss of subsistence use of natural resources."  However, the use of natural resources for commercial purposes does not constitute subsistence use.  *See Secko Energy, Inc. v. M/V MARGARET CHOUEST*, 820 F.Supp. 1008, 1015 (E.D. La. 1993); *Petition of Cleveland Tankers*, 791 F.Supp. 669, 678 (E.D. Mich. 1992).  Section 2702(b)(2)(A) allows for recovery of damages for "injury to … natural resources," but those damages are only recoverable by "a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee."  Therefore, neither of these sections are applicable to Hanjin's claim.

statutory construction that makes any part superfluous or meaningless, if that result can be avoided.")  Therefore, that broad interpretation must be rejected.

ACL submits that the language relating to lost profits or reduced earning capacity resulting from injury to natural resources was intended to protect commercial fishermen, crabbers, shrimpers and other similarly situated individuals who make their living harvesting the natural resources.  Indeed, the legislative history on subsection (b)(2)(E) specifically noted that "a fisherman may recover lost income due to damaged fisheries resources…."  *H.R. CONF. REP. 101-653*, 1990 U.S.C.C.A.N. 779, 781, 1990 WL 132747 (Leg. Hist.).

In any event, moving defendants still have to establish a physical connection between the spill and the delay.  However, the actual cause of most of the delay[13] to the moving defendants vessels was the United States Coast Guard order closing the Mississippi River (Doc. 5, Answer ¶ 17).  The order was an intervening cause, breaking the causal relationship between the oil spill and the delay to the vessel.  *Taira Lynn Marine Limited,* 444 F.3d at 380 (Mason's claim for the loss of crabs that spoiled when the electricity was turned off during the mandatory evacuation was denied because "the allision did not physically cause the disruption in electrical power").

The moving defendants are seeking to recover for economic losses and fall into one of two categories of claimants:

1.      Owners or charterers of vessels that were not oiled or otherwise damaged as a result of the oil spill but who seek to recover for economic losses, including alleged lost profits or reduced earnings, because of delays to the vessel resulting from the order of the United States Coast Guard closing the Mississippi River.

---

[13] For those defendants whose vessels were actually oiled and had to be cleaned, the short time lost due to the cleaning is admittedly not a result of the Coast Guard order.

2.    Owners or charterers of vessels that were oiled, but not otherwise damaged, as a result of the oil spill and who seek to recover for economic losses, including alleged lost profits or reduced earnings, for periods of time extending beyond the time necessary to clean the vessels, because of further delays to the vessel resulting from the order of the United States Coast Guard closing the Mississippi River.

There are a few legal questions which need to be answered in order to establish ACL's liability, if any, to these two categories of claimants:

A.    Does oiling constitute damage under § 2702(b)(2)(E)?  (*See Seaboats, Inc. v. Alex C. Corp.*, Nos. Civ.A. 00-12500, Civ.A. 01-12184, Civ.A. 01-12186, 2003 WL 203078 at *5 (D. Mass. Jan. 30, 2003)).

B.    Is a claimant whose vessel was oiled entitled to recover economic losses incurred for the period the vessel was delayed for cleaning?

C.    Is a claimant entitled to recover economic losses incurred due to the fact that the vessel was delayed as a result of the Coast Guard's order closing the Mississippi River?

ACL believes that after the Court resolves those legal issues, it is likely that most, if not all, of the claims by the moving defendants could be resolved.

## CONCLUSION

This Court has subject matter jurisdiction over this action.   In order to achieve an economy of judicial resources, the Court should hear this declaratory judgment action.  Finally, the Complaints and Amended Complaint state valid causes of action.   Therefore, the moving defendants motions to dismiss should be DENIED.

This 19th day of August, 2009.

Respectfully submitted,

/s/ Glenn G. Goodier

GLENN G. GOODIER (#06130), T.A.
RICHARD D. BERTRAM (#17881)
LANCE SANNINO (#29409)
JONES, WALKER, WAECHTER, POITEVENT
  CARRÈRE & DENÈGRE, L.L.P.
201 St. Charles Avenue – 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:     (504) 582-8174;
Fax:              (504) 582-8010
goodier@joneswalker.com

and

/s/ John A.V. Nicoletti

JOHN A.V. NICOLETTI – Admitted pro hac vice
NOOSHIN NAMAZI – Admitted pro hac vice
TERRY L. STOLTZ – Admitted pro hac vice
NICOLETTI HORNIG & SWEENEY
Wall Street Plaza; 88 Pine Street
New York, NY 1005-1801
Telephone:     (212) 220-3830
Fax:              (212) 220-3780
jnicoletti@nicolettihornig.com

**Attorneys for American Commercial Lines LLC,
Plaintiff**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 19th day of August, 2009 served a copy of the

foreground pleading on counsel for all parties by electronic filing, facsimile, hand delivery and/or

by mailing same by United States mail, properly addressed and first class postage prepaid.

/s/ Glenn G. Goodier